IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-00287-MSK-MJW

ADA MENZIES,

      Plaintiff,

v.

LA VETA SCHOOL DISTRICT RE-2,
WAYNE GRAYBEAL, in his individual and official capacity,
DAVID MOLYNEUX, in his individual and official capacity, and
DEBBIE CHANNEL, in her individual and official capacity,

      Defendants.

---

## ORDER GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, IN PART, AND DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE

---

THIS MATTER comes before the Court on the Defendants' Motion for Summary Judgment (**#28**). Having considered the motion, the response (**#41**), the reply (**#42**), and the documentary evidence submitted therewith, the Court finds and concludes as follows.

### I.  Jurisdiction

For purposes of determining the pending motion, the Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

### II. Issue Presented

The Plaintiff, Ada Menzies, asserts nine claims for relief against the La Veta School District RE-2 ("the School District"), Superintendent Wayne Graybeal, and School Board

Members David Molyneux and Debbie Channel.[1]  These claims are:

(1)    All Defendants regarded Ms. Menzies as disabled and discriminated against her by preventing her from performing her job as Head Cook, ridiculing her need to use oxygen and terminating her employment, in violation of the Americans with Disabilities Act ("ADA").

(2)    All Defendants retaliated against Ms. Menzies because she complained about their discriminatory practices, in violation of the ADA.

(3)    The School District violated the Family and Medical Leave Act ("FMLA").

(4)    The School District breached its contract with Ms. Menzies when it disallowed other employees from contributing personal leave to her, as otherwise set forth in a Staff Handbook.

(5)    The School District breached its contract with Ms. Menzies when it terminated her employment after she followed the chain of command policy set forth in a Staff Handbook.

(6)    The School District breached its contract with Ms. Menzies when it underpaid her in 2002 and 2003.

(7)    Mr. Graybeal tortiously interfered with Ms. Menzies' employment relationship with the School District.

(8)    Mr. Graybeal engaged in outrageous conduct.

(9)    All Defendants violated Ms. Menzies' right to procedural due process when they terminated her employment, in violation of 42 U.S.C. § 1983.

The issue presented is whether a trial is required on any of these claims.

---

[1] To the extent practicable, the Court refers to each party by name.  Otherwise, the Court collectively refers to the School District, Mr. Graybeal, Mr. Molyneux and Ms. Channel as "the Defendants."

### III.  Material Facts

Based upon the evidence submitted, which the Court construes most favorably to Ms. Menzies, the Court finds for purposes of this motion that:

1.      Mr. Graybeal hired Ms. Menzies to work as the Head Cook for the School District in August 2001.  She was an at-will employee throughout her employment with the School District, and she reported directly to Mr. Graybeal.

2.      On February 6, 2003, Ms. Menzies suffered severe injuries in an automobile collision.  Her injuries initially rendered her unable to perform work of any kind.  She was hospitalized from February 6 through at least March 16, 2003.[2]

3.      At the operative time, the School District had an FMLA policy entitled "Federally-Mandated Family Leave."  Such policy provide that it "shall apply to all family and medical leaves of absence except to the extent that paid leaves are covered under other Board policies for any part of the 12 weeks of leave to which the employee is entitled."  Ms. Menzies was not aware of this policy until 2004.

4.      On April 17, 2003, Ms. Menzies submitted a request for leave under the FMLA to the School District.  Her request stated that her medical condition commenced on February 6, 2003, was expected to last 6 to 8 months, and rendered her unable to perform work of any kind.  Her doctor authorized her to return to work in September 2003.

5.      The School District calculated that Ms. Menzies' FMLA leave would extend from the date of her collision to May 7, 2003.  It terminated her employment on May 7, 2003, after she

---

[2] According to her affidavit, Ms. Menzies was in a coma and on life support from March 4 through 14.  A letter from her sister reflects that Ms. Menzies remained hospitalized as of March 16.  However, the record does not disclose the exact date when she was released from the hospital.

did not return to work, but it provided her with health insurance through the entire month of May.

6.      In September 2003, Ms. Menzies returned to work for the School District on a part-time basis as Head Cook.

7.      When she returned to work in September 2003, Ms. Menzies used supplemental oxygen to breathe.  Mr. Graybeal determined that for safety reasons, she should not be allowed in the kitchen with her oxygen tank when the propane stoves were in use.  He believed that the tank contained pressurized oxygen which could drastically accelerate any fire.

8.      Mr. Graybeal commented on her oxygen use, telling her that the oxygen would make her lazy, that it was addictive, and that it was her "pacifier."  He also touched her air cord on two occasions.  During one encounter in the cafeteria, Mr. Graybeal got angry with Ms. Menzies and pushed his chair into her desk.

9.      In April 2004, Ms. Menzies requested clarification of her pay and benefits from the previous year.  In response, Mr. Graybeal told her that she was "making trouble" and tapped her on the shoulder with some rolled up papers.

10.     On June 22, 2004, Mr. Graybeal informed Ms. Menzies that he would recommend to the School Board that she not be offered employment for the 2004-2005 school year, purportedly because of a lack of cooperation between herself, Mr. Graybeal and the School Board, her failure to follow the chain of command, and her refusal to meet with Mr. Graybeal unless a witness was present.

11.     At some point, Ms. Menzies filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), but the date and content of such charge is not part of the record.

12.     The EEOC issued its Notice of Right to Sue on August 26, 2005.  Ms. Menzies

commenced this action approximately six months earlier on February 15, 2005.

13.     At the operative times, the School District had a Staff Handbook that provided in

relevant part:

### Staff Complaints and Line of Authority

> Staff complaints or concerns should be voiced to the
> immediate supervisor, either the Building Principal or the
> superintendent.  Complaints relayed directly to school board
> members, or voiced in public before the supervisor has an
> opportunity to address them are generally counter-productive.  If
> the staff member is not satisfied with the action of the supervisor,
> an appointment can be made with the next person in line of
> authority to discuss the issue.

14.     In Ms. Menzies' case, her immediate supervisor was Mr. Graybeal; her next in line

supervisor was the School Board President.

15.     Ms. Menzies followed the directives of the "Staff Complaints and Line of

Authority" provisions on several occasions.  She sought clarification of her leave calculations

from Mr. Graybeal, and she complained to School Board member Mr. Molyneux that she was

"having problems with a pay situation and that there was an issue concerning bottled air" because

"she was wanting to take oxygen into the kitchen and Wayne Graybeal was not allowing that to

happen."

16.     However, the record reveals no evidence that Ms. Menzies complained to Mr.

Graybeal or any School Board member that she believed she was being subjected to

discrimination.

17.     At the operative time, the School District had a policy entitled "Discipline,

5

Suspension and Dismissal of Support Staff."  This policy explained that all support staff were at-will employees and that they "shall have only those employment rights expressly established by Board policy."

## IV.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law determines what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See*

*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is no genuine dispute as to any material fact, no trial is required because the court applies the law to the undisputed facts and enters judgment.  If there is a genuine dispute as to material fact, a trial is required.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## V.  Analysis

### A.  ADA Claims

#### Subject Matter Jurisdiction

The Defendants first argue that the Court lacks subject matter jurisdiction over Ms. Menzies' ADA claims because she did not receive a Notice of Right to Sue letter from the EEOC. Because the EEOC has issued such letter, the Court rejects this argument and concludes that it has subject matter jurisdiction over both ADA claims.  *See Jones v. American State Bank*, 857 F.2d 494, 499-500 (8th Cir. 1988).

#### Discrimination

To establish a *prima facie* claim of discrimination on the basis of a disability, Ms. Menzies must produce evidence to prove that:

(1)      She is disabled for purposes of the ADA.

7

(2)     She is qualified, with or without reasonable accommodation, to perform the essential functions of the job she held or desired.

(3)     The Defendants discriminated against her because of her disability.

*See Davidson v. America Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003).

To be disabled under the ADA , the employee must have:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2)(C).  Here, Ms. Menzies claims that the Defendants regarded her as disabled in that they viewed her as substantially limited in the major life activity of working.

Evaluating claims involving the major life activity of "working" has posed particular challenges for the courts.  In *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 200 (2002), the Supreme Court mentioned "conceptual difficulties inherent in the argument that working could be a major life activity," and explained that it was "hesitant to hold as much." Nevertheless, the Court in *Toyota* declined to directly address the question, and in the absence of clear guidance, most courts have treated "working" as a major life activity under the ADA, as have the parties here.  However, *Toyota* serves as an important indicator that claims founded on the major life activity of "working" present unusual analytical obstacles.  To establish that an employee is substantially impaired in the major life activity of "working," the employee must show that she is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.  *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999) (*citing* 29 C.F.R. § 1630.2(j)(3)(i)).

8

The EEOC has identified certain factors that should be considered when deciding whether an individual is substantially limited in the major life activity of working: (a) the geographical area to which the employee has reasonable access; (b) the "class of jobs," defined as the job from which the employee has been disqualified, and the number and types of jobs utilizing similar knowledge, training, skills, and abilities within that geographical area from which the employee is also disqualified because of her impairment; and (c) a "broad range of jobs in various classes," defined as the job from which the employee has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the employee is also disqualified because of her impairment. *Id.* at 491-92 (*citing* 29 C.F.R. §§ 1630.2(j)(3)(ii)(A) & (B)). Thus, an employee asserting that she is substantially impaired in the major life activity of working must typically come forward with evidence of the knowledge, training, skills, and abilities necessary to perform her position, as well as evidence about the prevalence of jobs demanding similar knowledge, training, skills, and abilities in the employment market in the geographic area surrounding her workplace. *See Bolton v. Scrivner, Inc.*, 36 F.3d 939, 944 (10th Cir. 1994).

When an employee asserts not that she is <u>actually</u> impaired in the major life activity of working, but rather, that the employer <u>regarded</u> her as being so impaired, an additional analytical contortion is required. In a "regarded as" claim, the focus is no longer on the objective effect of the employee's impairment, but instead is upon the employer's subjective impressions of the effects of the employee's impairment. *See Ross v. Campbell Soup Co.,* 237 F.3d 701, 709 (6th Cir. 2001). Thus, in a "regarded as" claim premised upon the major life activity of "working," the employee must show that the employer subjectively believed that the employee's impairment

limited the employee's ability to perform a class of jobs in the geographic area. As the Sixth Circuit observed in *Ross*, "[p]roving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA." *Id.*

The Defendants contend that Ms. Menzies cannot establish that they regarded her as disabled. Ms. Menzies contends that the Defendants perceived her as disabled because Mr. Graybeal would not allow her to work in the kitchen with her oxygen canister.

The evidence shows that Mr. Graybeal did not want Ms. Menzies' oxygen canister to be in the kitchen for safety reasons given the presence of propane stoves and his belief that the oxygen was an accelerant. There is no evidence that any Defendant considered Ms. Menzies as limited in her ability to perform the functions of her job as Head Cook or of an entire class, or broad range, of jobs. Ms. Menzies has produced no evidence as to the knowledge, training, skills, and abilities necessary to perform the Head Cook position, nor did she produce evidence about other jobs demanding similar knowledge, training, skills, and abilities in the employment market in the geographic area surrounding her workplace. Furthermore, the evidence is that the School District rehired Ms. Menzies to work as the Head Cook after her accident, notwithstanding her use of oxygen. Therefore, Ms. Menzies has failed to make a *prima facie* showing that the Defendants regarded her as disabled.

In support of her contention to the contrary, Ms. Menzies relies upon *Kelly v. Metallics West, Inc.*, 410 F.3d 670 (10th Cir. 2005). In *Kelly*, the employer refused to let the employee return to work because the employee used supplemental oxygen and the employer "did not want the responsibility because she might 'fall over dead.'" *See id.* at 672. The employer instead directed the employee to obtain disability benefits. *See id.* at 673. In the employee's termination

letter, the employer stated that the employee's use of oxygen did "not make for a stable employee." *See id.*

Kelly is distinguishable from the case at bar and does not govern the issue in dispute here. The *Kelly* court did not address whether the employee was regarded as disabled by her employer. Indeed, there appeared to be no factual dispute in that regard. Instead, the issue presented was whether an employer had a duty to provide accommodation to an employee whom it regarded as disabled. The Tenth Circuit concluded that it did. Therefore, *Kelly* provides little guidance.

**<u>Retaliation</u>**

To establish a *prima facie* claim of retaliation, Ms. Menzies must produce evidence to prove that:

(1)    She engaged in an activity protected by the ADA.

(2)    She was subjected to an adverse employment action.

(3)    There is a causal connection between the protected activity and the adverse action.

*See Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1264 (10th Cir. 2001).

For an individual's activity to be protected, he or she must have opposed an act or practice made unlawful by the ADA, or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA.  42 U.S.C. § 12203(a).  A protected activity ranges from filing formal charges to voicing informal complaints to superiors. *See Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) (Title VII case).

The Defendants contend that Ms. Menzies has insufficient evidence to establish that she engaged in a protected activity.  Ms. Menzies responds that she complained to Ms. Channel that Mr. Graybeal had made comments about her oxygen use and touched her oxygen cord, but she

11

points to no evidence of such complaint in the record.  She also responds that she complained to Mr. Molyneux about the restriction on bringing her oxygen tank into the kitchen.

Ms. Menzies has produced evidence that she complained to Mr. Molyneux that she was not allowed to bring oxygen into the school kitchen and about her pay situation.  However, such evidence is nonspecific and makes no reference to any discriminatory conduct.  Ms. Menzies has produced no evidence that she ever complained to Mr. Molyneux or Ms. Channel that Mr. Graybeal or anyone else had discriminated against her on the basis of a perceived or actual disability.  The most that can be discerned from her complaint to Mr. Molyneux is that she was not happy with the restriction on bringing oxygen into the kitchen, not that she believed the restriction was the result of any discrimination.  In other words, Ms. Menzies has made no demonstration that she alerted any member of the School Board that there was a potential issue of discrimination in violation of the ADA.  In addition, there is no evidence that she made any charge, testified, assisted or participated in an investigation, proceeding or hearing under the ADA prior to her termination.  Therefore, she has failed to make a *prima facie* showing of retaliation.

## B.  FMLA Claims

### Interference

The FMLA entitles an eligible employee to 12 weeks of leave during any 12-month period for a serious health condition.  *See* 29 U.S.C. § 2612(a)(1).  To establish a *prima facie* claim of "interference" in violation of the FMLA, Ms. Menzies must produce evidence to prove that:

(1)     She had a right to FMLA leave.

(2)     The School District interfered with that right.

(3)     Such interference was related to Ms. Menzies' exercise of her FMLA rights.

12

*See Smith v. Diffee Ford-Lincoln Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002); *Jones v. Denver Public Schools*, 427 F.3d 1315, 1319 (10th Cir. 2005).

The School District contends that Ms. Menzies cannot establish interference with with Ms. Menzies' FMLA rights. Ms. Menzies contends that the School District interfered with her FMLA rights because it treated her as being on FMLA leave as of the date of her accident.  She contends that such treatment violated 29 C.F.R. § 825.208(a) because the School District had not previously informed her that her leave would be treated as FMLA leave.[3]

The identified regulation provides that it is the employer's responsibility to inform an employee that leave will be treated as FMLA leave within two business days after it learns that the leave is being taken for an FMLA-required reason.  The regulation further provides:

> If the employer has the requisite knowledge to make a
> determination that the paid leave is for an FMLA reason at the time
> the employee either gives notice of the need for leave or
> commences leave and fails to designate the leave as FMLA leave
> (and so notify the employee in accordance with paragraph (b)), the
> employer may not designate leave as FMLA leave retroactively, and
> may designate only prospectively as of the date of notification to
> the employee of the designation.[4]

The Third Circuit ruled in *Conoshenti v. Public Service Elec. & Gas Co.,* 364 F.3d 135, 144 (3d Cir. 2004), that an employer's failure to designate leave as FMLA leave is not actionable

---

[3] According to the School District's FMLA policy, Ms. Menzies' leave was automatically classified as FMLA leave.  However, Ms. Menzies contends that she did not know that this policy existed. Therefore, the Court does not treat the policy as notice to Ms. Menzies that her leave was being treated as FMLA leave.

[4] At least two circuit courts have concluded that this regulation is invalid because it entitles an employee to more leave than the FMLA allows. *See  Ragsdale v. Wolverine Worldwide, Inc.,* 218 F.3d 933, 938 (8th Cir.2000); *McGregor v. Autozone, Inc.,* 180 F.3d 1305, 1308 (11th Cir. 1999).  On *certiorari* review, the Supreme Court affirmed the Eighth Circuit's ruling in *Ragsdale* as to its invalidation of a companion regulation, 29 C.F.R. § 825.700(a), which has almost an identical effect to that of 29 C.F.R. § 825.208.  In this case, it is not necessary to address the validity of 29 C.F.R. § 825.208.

unless the employee is prejudiced by such failure.  This requires the employee to show that he or she would have worked during the 12-week period which was treated as FMLA leave by the employer.  *See id.*  The Court agrees with the Third Circuit that in order for an employer's failure to expressly designate leave as FMLA leave to give rise to a cognizable claim, the employee must be prejudiced by that failure.[5]

Ms. Menzies contends that she would have structured her leave differently if she had known that her FMLA leave began on the date of the accident.  However, she has produced no evidence to support this assertion – she has shown no other means of structuring her leave that would have been more beneficial to her.  Her  medical condition commenced on February 6, 2003 and her notice stated that she would be unable to work for 6 to 8 months and  was unable to perform work of any kind.  She was hospitalized for more than a month and for part of that time was in a coma.  The Court cannot speculate as to whether some other leave calculation would have been more beneficial than that used by the School District.  Absent such a showing, there has been no harm to Ms. Menzies, and her claim must be dismissed.

**Retaliation**

To establish a *prima facie* case of retaliation in violation of the FMLA, Ms. Menzies must produce evidence to prove that:

(1)    She exercised a protected right under the FMLA.

(2)    She suffered from an adverse employment action.

(3)    There is a causal connection between the two.

---

[5] This is consistent with the Supreme Court's ruling in *Ragsdale,* 535 U.S. at 90-91, which suggests that an employee should not be entitled to more than 12 weeks of leave absent a showing of prejudice.

14

*See Morgan v. Hilti*, 108 F.3d 1319, 1325 (10th Cir. 1997).

If she makes a *prima facie* showing, then it becomes the School District's burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action in accordance with *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Morgan*, 108 F.3d at 1323.  If the School District comes forward with such a reason, it becomes Ms. Menzies' burden to produce evidence that it is pretextual – in other words, that the School District's reason is unworthy of belief.  *See id.*

The School District asserts that Ms. Menzies cannot establish element 3 - that her exercise of her FMLA right caused the adverse action.  It also asserts that it has demonstrated a legitimate, non-discriminatory reason for termination of Ms. Menzies' employment and that she has insufficient evidence to prove pretext.  Ms. Menzies contends that there is a causal connection between her receipt of FMLA leave and both terminations of her employment.

With regard to element 3, direct evidence of a causal connection is not required.  Instead, evidence of circumstances justifying an inference of retaliatory motive are sufficient.  *See Burrus v. United Telephone Co. of Kansas, Inc.,* 683 F.2d 339, 343 (10th Cir. 1982).  For example, if the adverse employment action closely follows the protected conduct, such an inference may be drawn.  *See id.*  However, if the adverse action is not very close in time to the protected conduct, then additional evidence beyond temporal proximity must be produced.  *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999).

Ms. Menzies has identified two adverse employment actions which followed her FMLA-protected leave – the two terminations of her employment.  Her employment was first terminated when her protected leave expired.  As to this termination, Ms. Menzies has produced no evidence

15

that it occurred because she requested FMLA leave.  No inference of discrimination can be drawn based solely upon temporal proximity for two reasons.  First, the FMLA permits the termination of employment after the expiration of qualifying leave. Second, Ms. Menzies was rehired by the School District once she was able to return to work.  Therefore, with regard to this termination, no reasonable jury could conclude that the School District ended Ms. Menzies' employment because she invoked her right to FMLA leave.

Ms. Menzies' employment was terminated a second time more than one year after she requested FMLA-protected leave.  As to this termination, Ms. Menzies has produced no evidence connecting the use of FMLA leave and the termination. Furthermore, time proximity does not establish a causal link.  The intervening delay between Ms. Menzies' invocation of her FMLA rights and the termination, punctuated with intervening re-employment by the School District, precludes an inference of causation.[6]

## C. Due Process Claim

To establish a *prima facie* procedural due process claim, Ms. Menzies must produce evidence to prove that:

(1)     The School District deprived her of a liberty or property interest.

(2)     Without adequate or proper process.

*See Boutwell v. Keating*, 399 F.3d 1203, 1211-12 (10th Cir. 2005); *Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003).  The Defendants contend that Ms. Menzies can establish neither

---

[6] Even if the Court concluded to the contrary, the School District has identified legitimate, nondiscriminatory reasons for both terminations of Ms. Menzies' employment: (1) the expiration of her protected leave; and (2) her refusal to meet with her supervisor without a witness, her failure to cooperate with School Board members and her supervisor, and her failure to follow the chain of command.  Ms. Menzies has produced no evidence to suggest that these reasons are pretextual.

element and that the individual Defendants are entitled to qualified immunity.

To have a property interest in particular employment, an employee must show that she had a legitimate claim of entitlement to it. *See Board of Regents of State Colleges. v. Roth,* 408 U.S. 564, 577 (1972). Such entitlement can derive from a statute, rule or mutual understanding (such as a contract). *See Dickeson v. Quarberg*, 844 F.2d 1435, 1437 (10th Cir. 1988). A property interest cannot be premised solely upon a claim of entitlement to a particular procedure. *See Robbins v. U.S. Bureau of Land Management*, 438 F.3d 1074, 1085 (10th Cir. 2006). Under Colorado law, an at-will employee generally can be terminated without any process. *See Johnson v. Jefferson County Bd. of Health*, 662 P.2d 463, 472 (Colo. 1983).

Although she was an at-will employee, Ms. Menzies contends that the Staff Handbook gave her a protected property interest in her employment because it provided for a "line of authority policy" which she views as similar to a progressive discipline policy. Such policy, however, did not provide for any progressive discipline. Rather, it simply provided a suggested mechanism for employees to bring complaints to the attention of their superiors. It did not contain any language suggesting that Ms. Menzies had any continued entitlement to her job as Head Cook or that she was entitled to some sort of progressive review prior to termination. In addition, the Handbook neither expressly nor implicitly modified the School District's disciplinary policy which explains that at-will employees "shall have only those employment rights expressly established by Board policy." Therefore, Ms. Menzies has failed to establish a *prima facie* due process claim.

## D.  State Law Claims

For the reasons set forth above, all of Ms. Menzies' federal claims are dismissed.

17

Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over her state law claims.  The parties are not diverse, and the Court would not have subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

**IT IS THEREFORE ORDERED** that:

(1)     The Defendants' Motion for Summary Judgment **(#28)** is **GRANTED IN PART** with respect to Ms. Menzies' federal claims.  Ms. Menzies' federal claims are dismissed, with prejudice.

(2)     Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the state law claims.  Ms. Menzies' state law claims are dismissed, without prejudice.

(3)     The Clerk of Court is directed to close this case.

Dated this 26th day of May, 2006

**BY THE COURT:**

Marcia S. Krieger
United States District Judge